Case number 13-2699, Joseph Little v. Belle Tire Distributors Inc. Arguments not to exceed 15 minutes per side. Mr. Hardesty, for the appellant, you may proceed. Good morning. May it please the Court, David Hardesty on behalf of the appellant, Joseph Little. Your Honors, this is, as you're aware, a case for overtime compensation under the Fair Labor Standards Act. The district court granted summary disposition based on the exemptions that were claimed by Mr. Little's employer, Belle Tire. Mr. Little submits that in granting Belle Tire's motion, the district court lost sight of three very important principles. The first is that Belle Tire, the employer, bears the burden of establishing exemptions and every element of each exemption. The district court does not acknowledge specifically that burden in its opinion and I submit that the tenor of the opinion indicates that it lost sight of that burden. Secondly, the district court lost sight of the fact that exemptions to the Fair Labor Standards Act overtime requirements are to be narrowly construed against the employer and to further the remedial purposes of the Fair Labor Standards Act. They should be applied only where the employee is clearly and unmistakably within the terms and the spirit of the exemption. And finally, it appears the district court lost sight of the fact that this was a summary judgment proceeding and not a bench trial. Well, wasn't Mr. Little, didn't he become part of management? Well, that's the ultimate question, Your Honor, which is a very broad definition. He was... And it doesn't apply to those people, right? If certain conditions are met and that's the issue here. If Mr. Little's... This is the executive exemption. By the way, on either exemption, there's no dispute that he met the salary requirements, which was the first one. His primary duty has to be management, number one. Secondly, he has to direct the work customarily and regularly of 2MR employees. And third, he has to have firing authority or significant impact into that. So the fact that he's entitled management and that he has some responsibilities, which are identified as management responsibilities, is not enough. For instance, the Brillis case on which the district court relied made the statement that if an assistant manager has management duties, then he's exempt. It's just flat wrong and extends these exemptions well beyond the intention of Congress as expressed in the regulations. I think for the executive that this court's decision in Thomas v. Speedway is instructive. In that case, you had a store manager. She did a lot of other stuff. She stocked everything. But the store was hers. She hired, she fired, she interviewed. The store couldn't run without her. Here you have an individual who spends 80% to 90% of his time behind the counter selling tires and car repairs. Now that 80% to 90% is the sales. That leaves everything else that he does, including filling out invoices, making some orders to replenish inventory that's set by the company. Everything else he does comes into that period of time. The court below, it appears, accepted the testimony and the evidence by Bell Tire and failed to take into account Mr. Little's testimony and the reasonable inferences from that testimony. For instance, did he customarily and regularly direct the work of other employees? Mr. Little was asked, did you supervise? He said, no, I wouldn't say that I supervised. Did you direct the work of other employees? Well, in the absence of the store manager? If the need for direction came up. Well, telling them what job they're supposed to do, what particular customer is assigned to them and what the task is, the so-called running of the board, that was one of his principal jobs, wasn't it? Absolutely. So if he or the manager doesn't put somebody on the board, then that repair guy doesn't do the job? No, that's not how it works, Your Honor. First of all, the manager, unless he's working behind the counter, isn't going to put it on the work board. Because the testimony is, all right, you've got the counter. I don't know if you've been into Bell Tire or Discount Tire or anything. They've got a counter. There are three or four people standing beside it. There's a wall and a door that goes into the work area. And on that wall, it's either clothespins or hooks or something to put on. The salesman, whoever dealt with the customer, fills out the order. It's for such-and-such tires, it's for alignment, it's for whatever. And then there are columns for tire technicians, tune-up people, whatever. And you take that order and you hang it on the next available person. Okay? Now that's done by every salesman, and Mr. Little made that clear. He has that authority, that responsibility, just like everybody else at the counter does. You finish an order, you hang it on the board. In deciding what the order is, he testified that, well, if one person has somebody that's waiting in the store, and somebody else has somebody that's picking up the car in six hours, the two of them talk, and okay, we, the salespeople, and he can decide to put that on. So, Your Honor, he directs the work through that work board in the same way that the person standing at McDonald's, who puts an order up on the board saying, two Big Macs, an order of fries, and a Coke, directs the work. They pass on what is supposed to be done. But if there's a, you know, dispute as to who alignment, whose alignment get done first back in the shop, and the salesman, he makes a decision, absent the manager, right? The salesman, Your Honor? No, I'm talking about Mr. Little, as the assistant manager. There's no testimony to that. Mr. Little testified. Well, I'm just hypothetical. You're talking about these orders going back to the shop. They go out on the, whose gets done first? I'm saying to you, you got two salesmen both ordering alignment, and one said, I want mine to go first. So, Little's there, he's the assistant manager. He makes a decision. I don't know, Your Honor. That question wasn't asked. It's not in evidence. What was testified to by Mr. Little is that the salesman who wants to move his order up talks to the salesman who wrote the order that's ahead of him, and the two of them make that decision. There's no evidence that it ever gets to Mr. Little as the first assistant manager. One of the things that I thought was at least curious in this, and I don't mean to suggest this is dispositive, but is that what your client was paid compared to what everybody else was paid? Now, he's clearly not a tire technician, right? He's getting paid almost three times what a tire technician. Right, but he doesn't do the same work, and that's not... I understand that. They're out in the back putting on tires. Got it. So, he's really saying I'm the equivalent of a salesperson in the sense that I just perform primarily salesperson duties. That's neither executive nor administrative, right? To a great extent, yes. So, why was he getting paid almost 50% more than salespersons if it wasn't in reflection of his additional responsibilities and duties as a manager? Were they just stupid to pay him as much as they were paying him? Well, actually, no. They were paying him less than they would have had to pay him if they paid him at the same rate as the salespeople for the hours that he worked. If you take the amount that was paid to the average salesperson, and by the way, we don't know in there whether the other assistant managers were included in those salespersons because there's first and second assistant managers. All I know is... But assuming that it's... The deposition testimony seems to say the 32,571. Right. And if you compute, taking that 32,000 and basing that on 40 hours, and you come up with a regular rate for that person, and if you applied an overtime rate to that, and you had 55 hours, just 55 hours a week, which Mr. Little says that he earned or that he worked, he would be making over 50,000. So in fact, he's not getting paid as much per hour with overtime as he would be getting paid if he were being a salesman at 32,000. It seems to me we're making this a little more complicated than we need to. Salesman is averaging 32,000. Correct. He makes 46,000. Right. So you're saying that they were paying him more because he worked more hours as opposed to exercising management duties and responsibilities. Is that what you're saying? First of all, I don't know what their motivation was. I am saying that... Well, what is he claiming was the basis of him getting to almost 50% more? He was performing some management functions. We don't dispute that. We don't dispute that at all. He was performing some additional administrative type, but without discretion, administrative work, such as doing reconciliations, such as taking the cash, such as opening the doors, things that didn't involve discretion, but they were things above and beyond what a salesman did. He did additional non-exempt work, which the salespeople didn't do. That's one justification for paying him more. But also, Your Honor, he worked more hours than those other people worked. Is that in the record? I don't remember seeing it. I'm not saying it isn't. Where would I go to find that? Your Honor, I don't believe there's anything in the record regarding the hours that the salespeople worked, although I believe that in Mr. Cruz's deposition... That's probably not in the record. Okay. Hypothetical question. Hypothetical question. In terms of additional duties. You have a business that largely runs itself. In other words, you have all these procedures and policies and everything else. Everybody knows what their job is. Everybody does their job. So there doesn't really need to be a lot of actual decision-making to make this business hum along. You understand, generally speaking, the hypothetical? Yes. So would a manager or an assistant manager of my hypothetical not fall within the executive or administrative because, in reality, they don't actually have to do much to manage? Difficult hypothetical. Somebody has to be hired. You have to hire somebody. So that management has to be done. Mr. Little didn't do that. The managers did. Somebody has to set the schedules when people are going to work and assign them their hours. Mr. Little testified that all he did was input those. So there is some difference. Good morning. William Forrest on behalf of Bell Tire. I'd like to start with the primary duty test for management under both the regulations and the case law. And I think it's interesting that both the parties here are relying on this court's opinion and Thomas. And in that case, the key question was, the court asked itself, under the very first factor of the primary duty analysis, what duties are the most important to the success of the store? And this court held in Thomas scheduling, training, and hiring. If you don't have those three things, the store can't function. Here, there's evidence in the record, undisputed evidence in the record, that plaintiff did all three of those things and at least participated with respect to hiring in those things. In addition to... So the question that I have is, if somebody acts as the assistant manager one hour a week while the manager is away, would that be enough to make the assistant manager an executive under this test? Under this court's precedent and under your hypothetical, you're saying the employee would... Would act as the assistant manager, i.e., in lieu of the manager, because the manager's away, one hour a week. If it's one hour a week, you have to look at what is the employee doing? All of those things I'm going to hypothesize. I know this is not the case, but we'll do they'll handle that and do everything as if they're like the junior manager. They're the manager in training. So during the 99%... They're sales. They're doing sales. Now, where I believe your hypothetical departs from the facts in our case is, and this is the same holding in Thomas, during that, under your hypothetical, 99% of the time, Mr. Little, in addition to selling, also had the responsibility, the concurrent responsibility, of monitoring what was going on in the shop. There was the discussion about the work order board, but in addition to that, in addition to while he's selling, he has to be back in those 10 days where those tires are going on, tracking the time spent on the job to make sure people are keeping up, assisting the techs, giving them the tools that they need, the supplies that they need, and he testified about this. There was a dispute among the tire techs, and he said, we have a dispute. Here's what I'd like to do to have it fixed. If you look at his discipline, I think his discipline is very instructive. Let me stop you right there because, just like in my discussion with Mr. Hardesty, I don't remember seeing that or reading that. The image that we're being, or the picture we're being presented is he's standing at the sales desk 80 to 90% of the time, and that's all he does. Now, does the record reflect, and if so, where do I go from here? He's the guy going back in the bays to make sure that what they're doing for his orders and other salesmen's orders are actually being completed properly and timely. Absolutely. I would point you to both his, first I would start with his testimony, where he says. Just tell me where I find it, his testimony, right? So his testimony is number one, where he says, I regularly directed work in the shop. Number two, the deposition testimony of our Rule 30B6 witness, which said at page 125, most of the day, quote unquote, is directed at going back, controlling the workflow. They have to be back there every 15 minutes. I would then point you to the declarations of the store managers, which said, very specifically, in paragraph 7 of Mr. Scaglione's declaration and paragraph 8 of Mr. Pryor's declaration, they say, while we're there, we delegated the duty to send him back to do exactly that, go back and direct the work in the shop. Just one more follow-up to that. That wouldn't probably be particularly meaningful if we found out that all of the other salespeople, the $32,000 people, also were responsible to go back and make sure their orders were being satisfactorily handled. So, does the record say anything about whether Mr. Little's actions in that regard were different or distinguishable from the rest of the sales staff? Our declaration spoke specifically to what his, Mr. Little's duties were. What specifically did he do as the first assistant manager? It didn't speak to what the other salespeople did or didn't do. We just don't know that. We don't have evidence, correct, we don't have evidence in the record of what the other salespeople did. But I would point out that the regulations make it clear, the fact that you have another person performing exempt work does not, by itself, eliminate the exemption. They say, the key is... But obviously the exemption shouldn't swallow the whole here. So if every sales guy, hypothetically, was doing the same thing, you wouldn't be making the argument, right? Well, if you look at the... Is that right or wrong? I would answer it like this. I don't think that's a yes or no question or answer to that question. What I would say is this. If you look at Mr. Little's testimony, he said you had between five and eight tire techs, a glass tech, and three auto techs. So you have between nine and twelve people just in the shop. And so you have, under the regulations, which are, and they're very clear, you can have, you have to direct two or more employees. And if you have more than one manager overseeing them, it's still, the requirement is two. What you can't have is 30 or 40 managers all using the same two people as their directions, as their employees. And here you had testimony that you have a store manager and a first assistant manager. And he's, Little is the first assistant? Correct. And so, under that scenario, if you have Mr. Little and a store manager there together at the same time, and even a second assistant manager, hypothetically, you're still going to have the ability to have up to four to six supervisors to supervise the individuals in the shop alone, based on the numbers. In addition, Mr. Little testified, he supervised the salespeople. He mentored the salespeople. So it wasn't just the people in the shop. Turning back quickly to the primary duty test and this notion that... Back to the compensation for just a second. Again, I'm not suggesting this is dispositive. But does the record show whether there were other people making in the neighborhood of what he was making? And if so, who are they and what is their role in this store? The record shows only Mr. Little's compensation, which is $46,500. And the people he's comparing himself to, the salespeople, he doesn't claim he was a second or third assistant manager. He claims, I was just a salesperson. And it shows their compensation at $32,500. But does the record show what was the basis for each person's compensation? So was he paid a salary, regardless of the number of hours, and were they paid an hourly rate? The record shows that he was paid a salary and a bonus based on, and we think this is significant, based on the overall store performance. That's indicative of management. That's indicative of an executive. Does it show whether any other salespeople got bonuses? No. It shows what their total store or what their total compensation was. But do we know whether they worked overtime or not? That's not in the record. What we have in the record for those salespeople are what they earned. And I think that's the apples-to-apples comparison. What they earned. But do they earn it on an hourly basis or a salary-per-year or per-week basis? They earn a hourly salespeople, and they earn sales commissions. But if you look at, really, ultimately, and in Thomas, what this court looked at. Did he earn sales commissions, too, which would seem to be more indicative of a non-managerial sales role? Well, he did. But we're not disputing sales was part of Mr. Little's job. It was he earned a salary, he did earn sales commissions, and he also earned bonuses based on the entire performance of the store. But the $46,000, then, that he got could have been because he was a really good salesperson as opposed to because he was a manager-slash-executive. This court grappled with the exact same question in Thomas, and you looked at three things there. You looked at the base salary. You looked at the fact that the employee in that case also got a bonus based on the total store performance. And then you looked at the entire gross earnings and said, look, under any of those, there's a reason, to your hypothetical originally, that you're paying someone that much more money. And I think if you look at the gross amount between salespeople and Mr. Little, it's clear that they were paying him a very significant amount, and it was for that management work. So what percent of his time does the record show was devoted to management type of activities? He testified that he spent 80 to 90 percent of his time selling and the rest of the time managing. So that leads me to the question, and we take all the evidence in the light most favorable to him, right? You do. That's the standard. And you have the burden anyway of showing that he is an exempt employee. Correct. So if he were doing management one hour a week, would that be enough to make him a manager under this exemption? It depends on what you define sales as. The testimony is very clear that there's not this clear dissection between when you're selling and when you're managing. He didn't take off one hat and put on another. Well, that would apply to all the salespersons then. But those other salespeople didn't have management duties. There's no argument or suggestion. I don't understand why you won't answer my hypo because this is the second time I asked it, and you didn't answer the first time, and you're not answering. I'll try my best. I'll infer then that there is some division point between one hour of management and the 10 to 20 percent that he admits he was managing. Our contention is, and I'm not trying to avoid your question. I just don't think it's a yes or no answer. What we're saying is, and what we believe the evidence shows very clearly, is that during that 80 to 90 percent, he was managing. He testified, my duties did not stop when I was selling. They were concurrent. The regulations speak specifically to this. They say first assistant managers can stock shelves and direct employees at the same time. And we think that's precisely what happened here. That's Burger King 1. That's Burger King 2. That's exactly what this court held in Thomas. The court said, you can do these things. You can physically do something else while you manage. And if you look at what it was that Mr. Little was doing when he was there monitoring the shop, he's got a lot of duties that take him back into the shop to watch what the employees are doing. I think it's very instructive. If you look at the discipline that he gave to Mr. Giorno, in his own words, this shows the type of direction that Mr. Little is giving. He says. Was this true of the manager also? Of the store manager? The store managers testified, yes. When they're there, they have responsibilities. But they also said, we delegated. And the testimony was, at Bell Tire, the store manager and the first assistant really act as a team. And together, they're responsible for operating the store. They're scheduled on opposite ends of the shifts. One will open, one will close. There is a period of overlap. During that overlap, and the testimony is clear on this, our managers say, we delegated. We assigned Mr. Little to take care of the shop. We didn't keep it all to ourselves. And that gets to the. . . No, Your Honor. That is undisputed. So we do have an interesting dichotomy here where he says he's just a sales guy for 80 to 90 percent of the time, but the records show he's the only management employee there for 22 percent of the time. And he admits during that 22 percent that he's the boss. I'm directing. . . Now, his limitation is, well, if need comes up. Into your question that you asked the plaintiff's counsel, we didn't cite this. Well, you're the boss. If you're the boss, you're the boss whether you have to boss anybody around during that time or not, it seems to me. Precisely. And we would cite you for that principle to Mellis v. City of Pylup. And it's a Ninth Circuit case. But this quote, we think, goes exactly to that point. There, the plaintiff argued that he did not provide actual day-to-day supervision because his subordinates were competent, motivated employees who functioned well with minimal oversight. You're hypothetical. However, the duties test does not require constant supervision. It requires customary and regular supervision, which this record establishes without contradiction. Plaintiff's position would create the odd result that a manager with authority over a veteran crew of responsible employees who follow the rules and work independently would not be exempt, while a manager with identical authority over a group of less experienced employees who require constant attention would be exempt. What case was that again? That is Mellis v. City of Pylup. It's a Ninth Circuit case. Do you have a cite? It is. It's an unpublished case. It's 1999, U.S. App, Lexis, 26244 at pages 7 to 8, a 1999 case. So finish up if you would, please. Sure. By telling us when you've got him claiming he's not really a manager, there's nothing for him to do, he's selling 80% to 90% of the time, even though that's refuted by the 22% of the time. Why is this not a case where there's a sufficient factual dispute about what he really did to go to a jury? There is no jury question here because the plaintiff admits, and we think this is the absolute key, that during that 80%, 90% chunk where he says, I'm selling, his management duties are occurring concurrently during that time period. There's no dispute. So you have the 22% undisputed. During the 78%, you have the store manager saying, we delegated, he performed those duties during that time, and he did not testify that I only directed in the absence of the store manager. His only condition at page 36 to 37 of his deposition is that I managed only if the need arose, and that gets to our point, which we just made, which is you can't blame your employees for being competent. Unless there are any other questions? Thank you. Thank you. Thank you, Your Honor. Standing in front of microwave ovens, we find that one minute is a very long time. Standing in front of this bench, 12 minutes is a very short time. I think the important points that need to be stressed again is that this is a summary judgment that you're reviewing and not a trial. But it doesn't seem to me that there's a huge factual dispute here. It seems like the dispute is the legal conclusions that are drawn from these facts. So why am I wrong in that assessment? Well, for instance, there is a factual dispute about how much time Mr. Little spent doing management. He spent 80% to 90% of his time doing sales. There's no testimony as to how much time he spent doing the non-exempt clerical functions that have been identified. But is it true that you admit he was the manager because there was no other manager at the store for 22% of the time? He was the person that was the highest person in charge in the absence of the manager. Absolutely. You're quibbling. Is he denying that during that time that he was managing, whether he needed to do anything or not? To some extent, yes. Or are you saying there really was no manager there because your guy is just a sales guy? He still testified that he didn't believe he had the authority to impose a discipline. That was something that he had to check with the manager. If there was a refund that needed to be done, some adjustment on the Medalia computer system, which was only during the end of the period at issue here, he didn't make a decision. If the manager wasn't there and he couldn't reach them, he'd leave him a note and tell the customer the manager will have to do it. So in many respects, no, Your Honor, he was not. Either he was in charge when the manager was gone or nobody was in charge when the manager was gone. It's got to be one or the other. So what are you claiming? Well, and, Your Honor, what I'm doing is disagreeing with your characterization. I mean, yes, he was the only person there. But if it came to any real decision that had to be made, he didn't make it. He wouldn't make it. So you're claiming that during the time there was no manager, you're claiming that when the manager was gone, he wasn't the manager, there was no manager.  In a sense, yes, Your Honor. He was the manager in some, yes. He was the person in charge. What do you mean in a sense? Why are you qualifying that? Because the manager has some authority, all right? That's the notion of the executive exemption is we're the people that make the decisions and the non-exempt people are the people that don't. We're running this show. Was he the only person there and the person that would have to handle in some way every situation that came up during the manager's absence? Yes, I agree with that. But did he have the authority to make any real decisions? Could he hire somebody in the absence of the manager? No evidence that he could fire somebody, give them a raise, anything like that. He, in fact, didn't have any authority, and that's why I'm saying that even though managing only in the absence of the manager is not enough, that he had no real authority even when he was the only. And he wasn't the only management personnel. He was just the highest. They had second and third assistant managers as well. Your red light is on as well. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the roll?